FILED

2018 SEP 11 PM 12:28

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JESSICA KANABLE and
ANNETTE KANABLE,

    Plaintiffs,

CASE NO.: 3:18-cv-1090-J-31PDB

-VS-

ALLY FINANCIAL, INC.,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiffs, Jessica Kanable and Annette Kanable, by and through the undersigned counsel, and sues Defendant, ALLY FINANCIAL, INC., and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. § 559.55 *et seq.* ("FCCPA").

### INTRODUCTION

1.    The TCPA was enacted to prevent companies like ALLY FINANCIAL, INC. from invading American citizen's privacy and prevent abusive "robo-calls."

2.    "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

3.    "Senator Hollings, the TCPA's sponsor, described these calls as 'the *1256 scourge of modern civilization, they wake us up in the morning; they interrupt our

1

dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." *Fact Sheet: Wheeler Proposal to Protect and Empower Consumers Against Unwanted Robocalls, Texts to Wireless Phones*, Federal Communications Commission, (May 27, 2015), http://transition.fcc.gov/Daily_Releases/Daily_Business/2015/db0527/DOC-333676A1.pdf.

## JURISDICTION AND VENUE

5. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorney fees and costs.

6. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

7. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014)

8. The alleged violations described herein occurred in Clay County, Florida. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2) as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

9. Plaintiffs are natural persons, and citizens of the State of Florida, residing in Clay County, Florida

10. Plaintiffs are "consumers" as defined in Florida Statute § 559.55(8).

11. Jessica Kanable is an "alleged debtor."

12. Plaintiffs are the "called party." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

13. Defendant, ALLY FINANCIAL, INC., is a corporation with its principal place of business located at 500 Woodward Avenue, Detroit, Michigan, 48226 and which conducts business in the State of Florida through its registered agent, C T Corporation System located at 1200 South Pine Island Road, Plantation, Florida, 33324.

14. The debt that is the subject matter of this Complaint is a "consumer debt" as defined by Florida Statute §559.55(6).

15. ALLY FINANCIAL, INC. is a "creditor" as defined in Florida Statute §559.55(5)

16. ALLY FINANCIAL, INC. called Plaintiffs on their cellular telephones approximately seven-hundred (700) times in an attempt to collect a debt.

17. ALLY FINANCIAL, INC. attempted to collect an alleged debt from Plaintiffs by this campaign of telephone calls.

18. Upon information and belief, some or all of the calls the Defendant made to Plaintiffs' cellular telephone numbers were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiffs will testify that they knew it was an autodialer because of the vast number of calls she received and because they heard a pause when they answered their phones before a voice came on the line from ALLY FINANCIAL, INC..

19. Jessica Kanable is the subscriber, regular user and carrier of the cellular telephone number (904) ***-1516, and was the called party and recipient of Defendant's calls.

20. Annette Kanable is the subscriber, regular user and carrier of the cellular telephone number (904) ***-9257, and was the called party and recipient of Defendant's calls.

21. ALLY FINANCIAL, INC. placed an exorbitant number of automated calls to Plaintiffs' cellular telephones (904) ***-1516 and (904) ***-9257 an attempt to collect on an automobile loan.

22. Upon receipt of the calls, Plaintiffs' caller identification feature identified the calls were being initiated from, but not limited to, the phone number; (501) 821-8351.

23. On several occasions over the last year and a half Plaintiffs instructed ALLY FINANCIAL, INC.'s agent(s) to stop calling their cellular telephones.

24. In or about July of 2017, Annette Kanable told an agent/representative of the Defendant to "stop calling, take me off the list, take Jess off the list, we will make payments and call you if we need to."

25. In or about January of 2018, Annette Kanable told an agent/representative of the Defendant to "stop calling, we have an arrangement."

26. In or about November of 2017, Jessica Kanable told an agent/representative of the Defendant: "I've already made a deal with you, please stop calling."

27. ALLY FINANCIAL, INC. has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as it did to Plaintiffs' cellular telephones in this case.

28. ALLY FINANCIAL, INC. has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice just as it did to Plaintiffs' cellular telephones in this case, with no way for the consumer, Plaintiffs, or ALLY FINANCIAL, INC., to remove the number.

29. ALLY FINANCIAL, INC.'s corporate policy is structured so as to continue to call individuals like the Plaintiffs, despite these individuals explaining to ALLY FINANCIAL, INC. they wish for the calls to stop.

30. ALLY FINANCIAL, INC. has numerous other federal lawsuits pending against it alleging similar violations as stated in this Complaint.

31. ALLY FINANCIAL, INC. has numerous complaints across the country against it asserting that its automatic telephone dialing system continues to call despite requested to stop.

32. ALLY FINANCIAL, INC. has had numerous complaints from consumers across the country against it asking to not be called; however, Defendant continues to call the consumers.

33. ALLY FINANCIAL, INC.'s corporate policy provided no means for Plaintiff to have their number removed from Defendant's call list.

34. ALLY FINANCIAL, INC. has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

35. Not a single call placed by ALLY FINANCIAL, INC. to the Plaintiffs were placed for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

36. ALLY FINANCIAL, INC. willfully and/or knowingly violated the TCPA with respect to Plaintiffs.

37. From each and every call placed without consent by ALLY FINANCIAL, INC. to Plaintiffs' cellular phones, Plaintiffs suffered the injury of invasion of privacy and the intrusion upon their right of seclusion.

38. From each and every call without express consent placed by ALLY FINANCIAL, INC. to Plaintiffs' cellular phones, Plaintiffs suffered the injury of occupation of their cellular telephone lines and cellular phones by unwelcome calls, making the phones unavailable for legitimate callers or outgoing calls while the phones were ringing from ALLY FINANCIAL, INC.'s calls.

39. From each and every call placed without express consent by ALLY FINANCIAL, INC. to Plaintiffs' cellular phones, Plaintiffs suffered the injury of unnecessary expenditure of their time. For calls they answered, the time they spent on the call was unnecessary as they repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiffs had to waste time to unlock the phones and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiffs' cellular phones, which are designed to inform the user of important missed communications.

40. Each and every call placed without express consent by ALLY FINANCIAL, INC. to Plaintiffs' cellular phones was an injury in the form of a nuisance and annoyance to Plaintiffs. For calls that were answered, Plaintiffs had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiffs had to waste time to unlock the phones and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiffs' cellular phones, which are designed to inform the user of important missed communications.

41. Each and every call placed without express consent by ALLY FINANCIAL, INC. to Plaintiffs' cellular phones resulted in the injury of unnecessary expenditure of Plaintiffs' cellular phones' battery power.

42. Each and every call placed without express consent by ALLY FINANCIAL, INC. to Plaintiffs' cellular phones where a voice message was left which occupied space in Plaintiffs' phones or network.

43. Each and every call placed without express consent by ALLY FINANCIAL, INC. to Plaintiffs' cellular phones resulted in the injury of a trespass to Plaintiffs' chattel, namely their cellular phones and their cellular phone services.

44. As a result of the calls described above, Plaintiffs suffered an invasion of privacy. Jessica Kanable was also affected in a personal and individualized way by stress, anger, frustration, and hospitalization. Annette Kanable was also affected in a personal and individualized way anger and frustration.

## COUNT I
### (Violation of the TCPA)

45. Plaintiffs fully incorporate and reallege paragraphs one (1) through forty-four (44) as if fully set forth herein.

46. ALLY FINANCIAL, INC. willfully violated the TCPA with respect to Plaintiffs, especially for each of the auto-dialer calls made to Plaintiffs' cellular telephones after Plaintiffs notified ALLY FINANCIAL, INC. that they wished for the calls to stop.

47. ALLY FINANCIAL, INC. repeatedly placed non-emergency telephone calls to Plaintiffs' cellular telephones using an automatic telephone dialing system or

prerecorded or artificial voice without Plaintiffs' prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiffs respectfully demand a trial by jury on all issues so triable and judgment against ALLY FINANCIAL, INC. for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

## COUNT II
### (Violation of the FCCPA)

48. Plaintiffs fully incorporate and reallege paragraphs one (1) through forty-four (44) as if fully set forth herein

49. At all times relevant to this action ALLY FINANCIAL, INC. is subject to and must abide by the laws of the State of Florida, including Florida Statute § 559.72.

50. ALLY FINANCIAL, INC. has violated Florida Statute § 559.72(7) by willfully communicating with the debtor or any member of his or her family with such frequency as can reasonably be expected to harass the debtor or his or her family.

51. ALLY FINANCIAL, INC. has violated Florida Statute § 559.72(7) by willfully engaging in other conduct which can reasonably be expected to abuse or harass the debtor or any member of his or her family.

52. ALLY FINANCIAL, INC.'s actions have directly and proximately resulted in Plaintiffs' prior and continuous sustaining of damages as described by Florida Statute § 559.77.

**WHEREFORE**, Plaintiffs respectfully demand a trial by jury on all issues so triable and judgment against ALLY FINANCIAL, INC. for statutory damages, punitive

damages, actual damages, costs, interest, attorney fees, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

/s/ Jason Derry
Jason Derry, Esq.
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
Florida Bar #: 036970
Attorney for Plaintiff
